1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - X
       UNITED STATES OF AMERICA,    :   18-CR-00681(WFK)
3                                   :
                                    :
4                                   :   United States Courthouse
           -against-               :   Brooklyn, New York
5                                   :
                                    :
6                                   :   July 19, 2019
                                    :   4:00 p.m.
7      ANDREW PEARSE,               :
                                    :
8           Defendant.             :
     - - - - - - - - - - - - - - X
9
            TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10        BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
               UNITED STATES DISTRICT JUDGE
11
                   A P P E A R A N C E S:
12
     For the Government:     RICHARD P. DONOGHUE, ESQ.
13                           United States Attorney
                             Eastern District of New York
14                           271 Cadman Plaza East
                             Brooklyn, New York 11201
15
                       BY:   MARK E. BINI, ESQ.
16                           HIRAL D. MEHTA, ESQ.
                             MARGARET MOESER, ESQ.
17                           KATHERINE NIELSEN, ESQ.
                             Assistant United States Attorneys
18
     For the Defendant:      LISA A. CAHILL, ESQ.
19                           747 Third Avenue, 32nd Floor
                             New York, New York 10017
20
     Court Reporter:         DENISE PARISI, RPR, CRR
21                           Official Court Reporter
                             United States Courthouse
22                           225 Cadman Plaza East
                             Brooklyn, New York 11201
23                           Telephone: (718) 613-2605
                             E-mail: DeniseParisi72@gmail.com
24
     Proceedings recorded by computerized stenography.  Transcript
25   produced by Computer-aided Transcription.

Proceedings                                           2

1          (In open court.)

2          THE COURTROOM DEPUTY:  All rise.  Docket No.

3    18-CR-681, USA versus Andrew Pearse, the Honorable William F.

4    Kuntz, II, presiding.

5          THE COURT:  Good afternoon, Counsel.  Would you

6    please state and spell your names for the court reporter.

7          Ladies and gentlemen of the public, you may be

8    seated.

9          MR. BINI:  Yes, Your Honor.  Mark Bini, M-A-R-K

10   B-I-N-I, and I'm joined by Hiral Mehta, Margaret Moeser, and

11   Katherine Nielsen for the United States.  I will ask them to

12   spell their names as well.

13         MR. MEHTA:  Good afternoon Your Honor, H-I-R-A-L,

14   Hiral, Mehta, M-E-H-T-A, for the Government, Your Honor.

15         THE COURT:  Good afternoon.

16         MS. MOESER:  Good afternoon, Your Honor.  Margaret

17   Moeser, M-A-R-G-A-R-E-T M-O-E-S-E-R, for the Government.

18         MS. NIELSEN:  Good afternoon.  I'm Katherine,

19   K-A-T-H-E-R-I-N-E N-I-E-L-S-E-N, also for the Government.

20         THE COURT:  Good afternoon.

21         MS. VASQUEZ:  Good afternoon.  Pretrial Services

22   Officer Lourdes Vasquez, L-O-U-R-D-E-S V-A-S-Q-U-E-Z.

23         THE COURT:  Good afternoon.  Please be seated and

24   remain seated during the balance of the conference.  Just make

25   sure the microphone is on by having the green light lit.

Proceedings                                    3

1          MR. BINI:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MS. CAHILL:  Good afternoon, Your Honor.  My name is

4    Lisa Cahill and I represent the defendant, Andrew Pearse, who

5    is to my right.  L-I-S-A C-A-H-I-L-L.

6          THE COURT:  Good afternoon.

7          And would you spell your name, sir?

8          THE DEFENDANT:  Yes.  My name is Andrew Pearse,

9    A-N-D-R-E-W P-E-A-R-S-E.

10          THE COURT:  Thank you.  Please be seated and remain

11    seated for the balance of the proceeding.  And, again, if you

12    have your microphones on, you will see the little green light

13    to indicate that it's on.

14          Is it on for everyone?

15          MR. BINI:  Yes, Your Honor.

16          MS. CAHILL:  Yes, Your Honor.

17          THE COURT:  You know, it's not on up here even

18    though the green light is on.  Is there something we need to

19    do?

20          You can hear the difference when it's on and when

21    it's not, even for Lord Vader, who I only vaguely resemble.

22          Are there any other counsel who wish to state their

23    appearances for the record at this time?

24          I am now going to arraign the defendant.

25          Would the defendant please rise and raise your right

```
                        Proceedings                      4
```

 1   hand, sir?  Sir, do you solemnly swear or affirm that the

 2   testimony you are about to give to this Court is the truth,

 3   the whole truth, and nothing but the truth so help you God?

 4            THE DEFENDANT:  I do.

 5            THE COURT:  Thank you, sir.  Please be seated.

 6            Mr. Pearse, I'm going to begin by asking you a few

 7   questions about your background.  Would you please state

 8   again, sir, your full name?

 9            THE DEFENDANT:  Andrew James Pearse.

10            THE COURT:  And would you spell it?  And, again,

11   pull that microphone close to you and make sure the green

12   light is on.

13            THE DEFENDANT:  Full name is --

14            THE COURT:  Push the oblong --

15            THE DEFENDANT:  Andrew James Pearse.

16            THE COURT:  You hear the difference.  There you go,

17   sir.

18            THE DEFENDANT:  Thank you.  A-N-D-R-E-W J-A-M-E-S

19   P-E-A-R-S-E.

20            THE COURT:  And are you known by any other name,

21   sir?

22            THE DEFENDANT:  No, Your Honor.

23            THE COURT:  What is your date of birth?

24            THE DEFENDANT:  September 6, 1969, Your Honor.

25            THE COURT:  And where were you born, sir?

```
                          Proceedings                      5
```

1          THE DEFENDANT:  I was born in Christchurch, New
2    Zealand.
3          THE COURT:  And of what nation are you a citizen,
4    sir?
5          THE DEFENDANT:  New Zealand, Your Honor.
6          THE COURT:  Would you briefly describe your
7    educational background beginning with what we refer to here in
8    the States as grammar school or primary school?
9          THE DEFENDANT:  I was educated in the United
10   Kingdom.  I went to high school at Dulwich College.
11         THE COURT:  Would you spell that for the reporter
12   sir?
13         THE DEFENDANT:  D-U-L-W-I-C-H --
14         THE COURT:  Yes, sir.
15         THE DEFENDANT:  -- college.  I attended university
16   at Bristol University where I studied law.
17         THE COURT:  And did you receive a degree from that
18   university?
19         THE DEFENDANT:  I did, Your Honor.
20         THE COURT:  And what year?
21         THE DEFENDANT:  1992.
22         THE COURT:  And were you admitted to any Bar
23   Associations for the practice of law?
24         THE DEFENDANT:  Yes, Your Honor.  Subsequently I
25   passed the law exam and I was admitted to -- as a solicitor in

Proceedings                                                    6

1    the United Kingdom.

2              THE COURT:  Now, sir, have you taken any drugs, any

3    medicine, consumed any pills or consumed any alcohol within

4    the past 24 hours?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  You understand what is happening here

7    today sir?

8              THE DEFENDANT:  Yes, I do, Your Honor.

9              THE COURT:  Defense counsel, do you have any doubt

10   as to the defendant's competence to proceed at this time?

11             MS. CAHILL:  None, Your Honor.

12             THE COURT:  Prosecution, do you have any doubt as to

13   the defendant's competence to proceed at this time?

14             MR. BINI:  No, Your Honor.

15             THE COURT:  The Court hereby finds, based on the

16   defendant's representations and the representations of all

17   counsel of record, that the defendant is, in fact, competent

18   to proceed.

19             Mr. Pearse, it is important for you to understand

20   these proceedings, their significance.  If for any reason you

21   do not understand something that I say to you, please raise

22   your hand or otherwise indicate that you are having an issue

23   and I will repeat and restate whatever you do not understand.

24             Is that clear, sir?

25             THE DEFENDANT:  Yes, Your Honor.

Proceedings                                                    7

1          THE COURT:  Thank you.

2          Now, these proceedings are being recorded.  If I ask

3    you a question, it is important that you speak into the

4    microphone and answer each question fully and completely so

5    that the record will reflect your answers.

6          Do you understand that, sir?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  Now, the purpose of today's proceeding

9    is to make certain that you understand the nature of the

10   charges that have been brought against you by the United

11   States of America and to ensure that you understand that you

12   have certain constitutional rights under the United States

13   Constitution.

14         First of all, you have the right to be represented

15   by an attorney at today's proceedings and indeed at all future

16   proceedings before this court and the record indicates that

17   you are, in fact, represented by distinguished counsel here

18   today.

19         Secondly, sir, you have the right to remain silent.

20   If you start to make a statement, you may stop at any time.

21   Any statement that you make other than the statement to your

22   attorney, which you would make privately, may be used against

23   you.

24         Do you understand that, sir?

25         THE DEFENDANT:  I do, Your Honor.

Proceedings                                                    8

1        THE COURT:  Now, sir, do you understand that you

2   have the right to counsel and the right to remain silent?

3        THE DEFENDANT:  Yes, I do.

4        THE COURT:  Sir, you are here today because a grand

5   jury of the United States has returned this indictment against

6   you.  It was filed on December 19th of 2018 and charges you

7   with the following crimes:

8        Count One:  Conspiracy to commit wire fraud in

9   violation of Title 18 of the United States Code, Section 1349;

10        Count Two:  Conspiracy to commit securities fraud in

11   violation of Title 18 of the United States Code, Section 371;

12        Count Three:  Conspiracy to violate the Foreign

13   Corrupt Practices Act anti-bribery and internal controls

14   provisions in violation of Title 18 United States Code,

15   Section 371;

16        Count Four:  Conspiracy to commit money laundering

17   in violation of Title 18, United States Code, Section 1956(h).

18        Mr. Pearse, have you seen the indictment that was

19   filed against you in this case?

20        THE DEFENDANT:  Yes, I have, Your Honor.

21        THE COURT:  Have you had the opportunity to review

22   the indictment?  And have you, in fact, reviewed the

23   indictment with your counsel?

24        THE DEFENDANT:  Yes, I have, Your Honor.

25        THE COURT:  You understand the charges that are

Proceedings                                                9

1    being made against you, sir?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  Defense counsel, have you had the

4    opportunity to review the indictment that has been filed

5    against your client with your client?

6              MS. CAHILL:  Yes, I have, Your Honor.

7              THE COURT:  Do you have any concern about whether

8    your client understands what the charges against him are?

9              MS. CAHILL:  None, Your Honor.

10             THE COURT:  Have you advised your client of his

11   constitutional rights?

12             MS. CAHILL:  I have, Your Honor.

13             THE COURT:  The Court has marked the indictment as

14   Court Exhibit 1 for identification.  May I have the motion

15   from Government, please, to admit Court 1 into evidence?

16             MR. BINI:  So moved, Your Honor.

17             THE COURT:  Any objection from defense counsel?

18             MS. CAHILL:  No, Your Honor.

19             THE COURT:  The indictment is now entered into

20   evidence as Court 1.

21             (Court's Exhibit 1 was received in evidence.)

22             THE COURT:  I'm prepared to read the charges listed

23   in the indictment out loud unless the parties agree to waive

24   the reading of the indictment.

25             Let me ask the Government first, do you waive the

1    reading of the indictment?

2              MR. BINI:  Yes, Your Honor.

3              THE COURT:  Defense counsel, do you waive the

4    reading of the indictment?

5              MS. CAHILL:  We do, Your Honor.

6              THE COURT:  Since the parties have agreed to the

7    waiver of the indictment, which is now in evidence, I accept

8    the waiver.

9              Now, Mr. Pearse, are you ready to proceed to plead

10   with respect to the indictment?

11             THE DEFENDANT:  Yes, I am, Your Honor.

12             THE COURT:  What is your plea to Count One of the

13   indictment?  Guilty or not guilty?

14             THE DEFENDANT:  Guilty, Your Honor.

15             THE COURT:  What is your plea to Count Two of the

16   indictment?  Guilty or not guilty?

17             THE DEFENDANT:  Not guilty, Your Honor.

18             THE COURT:  What is your plea to Count Three of the

19   indictment?  Guilty or not guilty?

20             THE DEFENDANT:  Not guilty, Your Honor.

21             THE COURT:  What is your plea with respect to Count

22   Four of the indictment?  Guilty or not guilty?

23             THE DEFENDANT:  Not guilty, Your Honor.

24             THE COURT:  What is your position, United States

25   attorneys, with respect to the question of detention or bail

Proceedings                                                11

1    as to Mr. Pearse?

2          MR. BINI:  Your Honor, the Government would ask for

3    release on the conditions that have been recommended by

4    Pretrial Services; and if you wish, I can go through the

5    conditions, or I can hand it up to the Court for Your Honor's

6    consideration.

7          THE COURT:  Why don't you hand it up to the Court

8    for the Court's consideration.

9          MR. BINI:  Thank you, Your Honor.  I'm going to hand

10   up a copy of the bond conditions, along with a rider to it.

11         THE COURT:  Thank you.  Thank you very much.

12         MR. BINI:  And, Your Honor, if I just may note,

13   before you have a chance to fully review them, the reason why

14   the Government believes that there is clear and convincing

15   evidence that the defendant will return and appear for

16   sentence in this case is based upon the stringent conditions

17   handed up to Your Honor and also the defendant's guilty plea

18   here today to Count One before Your Honor, his acceptance of

19   responsibility for his conduct in this case; second, his

20   personal and family circumstances; and, third, his waiver of

21   extradition and voluntary appearance before Your Honor today.

22   And I would note that the Government has more fully set forth

23   its reasons for the bail request handed up to Your Honor in a

24   sealed submission.

25         THE COURT:  All right.  Let us begin an analysis

Proceedings                                    12

1   enlightened by the Government's position.

2          I take it you agree with everything that's been

3   said, defense counsel?

4          MS. CAHILL:  I certainly do, Your Honor.

5          THE COURT:  Thank you.

6          I would like to have the signed agreement marked as

7   Court Exhibit 2 for identification.  This has been signed by

8   the parties.

9          Do we have that?

10         THE COURTROOM DEPUTY:  Yes, Judge.  One moment.

11         THE COURT:  Thank you.

12         I have what has been marked as Court 2 for

13  identification, the Agreement.  It has been signed by the

14  parties and by counsel for the parties.

15         May I have a motion to have Court 2, the Agreement,

16  admitted into evidence?

17         MR. BINI:  So moved, Your Honor.

18         THE COURT:  Any objection?

19         MS. CAHILL:  None, Your Honor.

20         THE COURT:  Thank you.  It is admitted.

21         (Court's Exhibit 2 was received in evidence.)

22         THE COURT:  Thank you.  Would you hold on to this,

23  please?  Court 2 is in evidence.

24         Is there a motion to have Court 2 admitted under

25  seal?

1              MR. BINI:  Yes, Your Honor.  The Government would
2    ask that it be admitted under seal, Your Honor.
3              THE COURT:  Any objection?
4              MS. CAHILL:  None, Your Honor.
5              THE COURT:  All right.  It is admitted under seal.
6              We have gone through the process of taking the
7    guilty plea.  Let me just confirm.
8              Defense counsel, have you discussed the question of
9    a guilty plea with your client?
10             MS. CAHILL:  I have, Your Honor.
11             THE COURT:  And, in your view, does he understand
12   the rights he would be waiving by pleading guilty?
13             MS. CAHILL:  He does, Your Honor.
14             THE COURT:  And do you have any question as to his
15   competence to proceed today?
16             MS. CAHILL:  None whatsoever.
17             THE COURT:  Mr. Pearse, are you satisfied with the
18   assistance your attorney has given you thus far in your case?
19             THE DEFENDANT:  Yes, I am, Your Honor.
20             THE COURT:  Do you believe you have received the
21   effective assistance of counsel in your case?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  If you believe that you have not
24   received the effective assistance of counsel, you have the
25   right to appeal on that basis.

1            Defense counsel, I ask you again, do you feel you

2    need more time to discuss the question of a guilty plea with

3    your client?

4            MS. CAHILL:  I don't, Your Honor.

5            THE COURT:  All right.

6            Mr. Pearse, I previously offered to read the

7    indictment to you.  Again, I will ask you, do you waive the

8    reading of the indictment?

9            THE DEFENDANT:  I do, Your Honor.

10           THE COURT:  Now, Mr. Pearse, I want to make it very

11   clear on this record that you have a right to plead not

12   guilty.  No one can be forced to plead guilty.

13           Do you understand that?

14           THE DEFENDANT:  Yes, I do Your Honor.

15           THE COURT:  If you plead not guilty, you have a

16   right under the Constitution and the laws of the United States

17   to a speedy and public trial before a jury of your peers with

18   the assistance of your counsel.

19           Do you understand that, sir?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  At any trial, sir, you would be presumed

22   to be innocent; you would not have to prove you were innocent.

23   This is because under our system of law, it is the United

24   States Government that must come forward with proof that

25   establishes beyond a reasonable doubt that you are, in fact,

1    guilty of the crime charged.  If the Government failed to meet

2    this burden of proof, the jury would have the duty to find you

3    not guilty.

4             Do you understand that, sir?

5             THE DEFENDANT:  Yes, Your Honor.

6             THE COURT:  At a trial, sir, witnesses for the

7    Government would have to come here to this courtroom and to

8    testify in your presence.  Your counsel would have the right

9    to cross-examine these witnesses and your counsel could raise

10   legal objections to the evidence the Government sought to

11   offer against you.  Your counsel could also offer evidence on

12   your behalf if you and she thought there was evidence that

13   might help you in your case, or she could compel witnesses to

14   come to court and to testify in your defense if you thought it

15   would help your case.

16            Do you understand that, sir?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  At a trial, sir, you would have a right

19   to testify on your own behalf if you wish to do so.  On the

20   other hand, you could not be forced to be a witness at your

21   trial.  This is because under the Constitution and the laws of

22   the United States, no person can be compelled to be a witness

23   against himself.  If you wish to go to trial but elected not

24   to testify, this Court would instruct the jury that the jury

25   could not hold that against you.

1              Do you understand, sir?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  If instead of going to trial, however,

4    you elect to plead guilty to the crime charged and if I accept

5    your guilty plea, you will be giving up your right to a trial

6    and all the other rights I have just discussed with you.

7    There will be no trial in this case.  There will be no appeal

8    on the question of whether you did or did not commit the

9    offenses charged in Count One of the indictment.

10             Now, pursuant to paragraph 3 of your agreement, you

11   are also waiving your right to appeal or otherwise to

12   challenge your conviction or sentence if this Court imposes a

13   term of imprisonment at or below 240 months of imprisonment.

14             Do you understand that, sir?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  You could appeal or otherwise challenge

17   your conviction or sentence only if the sentence I impose

18   exceeded 240 months of imprisonment.  If I thereafter impose a

19   sentence that exceeds 240 months of imprisonment, you would

20   have the right to appeal or otherwise to challenge that

21   sentence to a higher court.

22             Do you understand, Mr. Pearse?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  So, to be crystal clear, if I were to

25   sentence you to above 240 months, regardless of how I do it,

Proceedings                    17

1   you would have a right to appeal or otherwise to challenge the

2   sentence; and if you could no longer, at that point, afford

3   the fees and expense associated with the appeal or challenge,

4   including attorney's fees, you could apply to this Court for

5   the appointment of counsel and the fees and expenses would be

6   paid at prescribed rates set by the United States Government

7   pursuant to the authority of the Criminal Justice Act.

8           Do you understand, sir?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Nothing, however, prevents you from

11  raising a claim of ineffective assistance of counsel at an

12  appropriate time and in an appropriate forum.

13          Do you understand, sir?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  If you do plead guilty, I will have to

16  ask you certain questions about precisely what you did and

17  where you did it in order to satisfy the Court that you are,

18  in fact, guilty of the charges set forth in Count One of the

19  indictment.  You will have to answer my questions truthfully

20  and to acknowledge your guilt truthfully and fully.  If you do

21  this, you will be giving up your right not to incriminate

22  yourself.

23          Do you understand, sir?

24          THE DEFENDANT:  Yes, I do, Your Honor.

25          THE COURT:  Mr. Pearse, are you willing to give up

Proceedings                                    18

1   your right to a trial and all of the other rights I have just

2   discussed with you?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Is there any other agreement other than

5   the aforementioned written agreement and any written proffer

6   agreements, if applicable, that has been reached with you or

7   that has been made with you in order to get you to plead

8   guilty?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Do you understand the consequences of

11  pleading guilty to Count One of the indictment in terms of

12  incarceration?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  I'm now going to discuss with you some

15  important information relative to sentencing; namely, the

16  statutory terms that you face for Count One of the indictment.

17  These are the penalties written directly by the Congress of

18  the United States for violation of the statutes you are

19  charged with today.

20           For Count One, you face a minimum term of

21  imprisonment of zero years and a maximum term of imprisonment

22  of 20 years.

23           Do you understand?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  You also face a maximum term of

```
                          Proceedings                    19
```

1   supervised release of three years following any term of

2   imprisonment.

3            Do you understand?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  If you violate a condition of release,

6   you may be sentenced to up to two years of imprisonment

7   without credit for prerelease imprisonment or time previously

8   served on post-release supervision.

9            Do you understand, sir?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  You also face a maximum fine of the

12  greater of $250,000 or twice the gross gain or twice the gross

13  loss.

14           Do you understand, sir?

15           THE DEFENDANT:  Yes, I do, Your Honor.

16           THE COURT:  You also face mandatory restitution in

17  the full amount of each victim's losses as determined by this

18  Court.

19           Do you understand, sir?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  You also face a mandatory special

22  assessment of $100 which I'm required to impose in all cases

23  per count.

24           Do you understand, sir?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You also face removal from this country

2    as set forth in paragraph 20 of the Agreement.

3          Do you understand?

4          THE DEFENDANT:  Yes, I do, Your Honor.

5          THE COURT:  Finally, you also face criminal

6    forfeiture of $2,500,000, proceeds of certain properties, and

7    all rights and interests in certain assets as set forth in

8    paragraphs 6 through 14 of the Agreement.

9          Mr. Pearse, this is a Sentencing Guidelines case, so

10   in sentencing you, this Court will have to consider certain

11   guidelines.  The guidelines do not control this Court, but

12   they inform this Court.

13         Defense counsel, have you discussed the Sentencing

14   Guidelines with your client?

15         MS. CAHILL:  I have, Your Honor.

16         THE COURT:  Is that true, Mr. Pearse?  Has she

17   discussed them with you?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  When the Court sentences you, sir, this

20   Court will have to consider certain factors about you and

21   about Count One of the indictment.  That inquiry will lead the

22   Court to a guideline sentencing range.  The Court is not

23   required to sentence you within that range.  The Court is

24   empowered to impose a sentence which is less than, equal to,

25   or greater than that provided by the guidelines.  But in all

Proceedings                    21

1   cases, including this one, this Court must and this Court will

2   consult the applicable guidelines sentencing range.

3           Before this Court imposes sentence, this Court will

4   receive a report prepared by the Probation Department, which

5   will recommend a particular sentence to the Court.  You and

6   your counsel will have the opportunity to see that report, and

7   if you think that report is mistaken, incomplete, or simply

8   wrong in any way, you will have the opportunity to bring that

9   to the Court.

10          Now, Mr. Pearse, do you have any questions for the

11  Court today?

12          THE DEFENDANT:  I do not, Your Honor.

13          THE COURT:  Does defense counsel have any questions

14  for the Court today?

15          MS. CAHILL:  I don't, Your Honor.

16          THE COURT:  Is there anything else defense counsel

17  would like the Court to address at this time?

18          MS. CAHILL:  No, Your Honor.

19          THE COURT:  Does the Assistant United States

20  Attorney have any questions for the Court at this time?

21          MR. BINI:  No, Your Honor.

22          THE COURT:  Is there anything else the Assistant

23  United States Attorney would like the Court to address at this

24  time?

25          MR. BINI:  No, Your Honor, not from the Government.

Proceedings                                    22

1          THE COURT:  Defense counsel, do you know of any

2    reason why your client should not enter a plea of guilty to

3    the charges set forth in Count One of the indictment?

4          MS. CAHILL:  I do not, Your Honor.

5          THE COURT:  Defense counsel, are you aware of any

6    viable legal defenses to the charges set forth against your

7    client in Count One of the indictment?

8          MS. CAHILL:  No, Your Honor.

9          THE COURT:  Mr. Pearse, are you ready to plead?

10         THE DEFENDANT:  I am, Your Honor.

11         THE COURT:  How do you plead to Count One of the

12   indictment charging a violation of Title 18 of the United

13   States Code, Section 1349, guilty or not guilty?

14         THE DEFENDANT:  Guilty, Your Honor.

15         THE COURT:  Are you making this plea of guilty

16   voluntarily?

17         THE DEFENDANT:  I am, Your Honor.

18         THE COURT:  Are you making this plea of guilty of

19   your own free will?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Has anyone threatened you to get you to

22   plead guilty?

23         THE DEFENDANT:  No, they have not, Your Honor.

24         THE COURT:  Has anyone forced you to plead guilty?

25         THE DEFENDANT:  No, Your Honor.

Proceedings                                           23

1          THE COURT:  Other than your agreement with the

2    Government, has anyone made you any promise that caused you to

3    plead guilty?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Has anyone made you any promise about

6    the sentence you will receive from this Court in this case?

7          THE DEFENDANT:  No, they have not, Your Honor.

8          THE COURT:  Mr. Pearse, would you please briefly

9    describe in your own words what you did to commit the offense

10   charged in Count One of the indictment; namely, a violation of

11   Title 18 of the United States Code, Section 1349, and where

12   you did it.

13         THE DEFENDANT:  If it pleases the Court, I've

14   prepared a written statement that I would like to read.

15         THE COURT:  Yes, that would be fine, sir.  I just

16   ask you, because we all tend to speed up when we read, just

17   read slowly so that I, the Government, and the court reporter

18   can hear it and take it down accurately.  So please proceed,

19   sir.

20         THE DEFENDANT:  Thank you, Your Honor.

21         During the time period alleged in Count One of the

22   indictment, I conspired with others to defraud certain

23   investors in connection with certain loans, including a

24   $500 million loan that Credit Suisse provided to a Mozambican

25   entity called EMATUM.

```
                        Proceedings                24
```

1          THE COURT:  Would you spell that for the court

2    reporter and for the Court, please?

3          THE DEFENDANT:  E-M-A-T-U-M.

4          THE COURT:  Please continue.

5          THE DEFENDANT:  A shipbuilding company based in

6    Lebanon called Privinvest Holdings --

7          THE COURT:  Would you spell that for the court

8    reporter?

9          THE DEFENDANT:  P-R-I-V-I-N-V-E-S-T.

10         THE COURT:  Yes.

11         THE DEFENDANT:  -- and/or its subsidiaries was to

12   provide the goods and services for the EMATUM project, as well

13   as projects associated with Mozambican entities ProIndicus --

14         THE COURT:  Would you spell that?

15         THE DEFENDANT:  P-R-O-I-N-D-I-C-U-S -- and MAM,

16   M-A-M.

17         THE COURT:  Thank you.

18         THE DEFENDANT:  For each project, Privinvest

19   received the loan funds directly from the lender.  During and

20   after my employment at Credit Suisse, Privinvest, with the

21   knowledge of its executives, Jean Boustani --

22         THE COURT:  Would you spell that name, please?

23         THE DEFENDANT:  First name is J-E-A-N, second name

24   is B-O-U-S-T-A-N-I.

25         THE COURT:  Please continue.

Proceedings                                25

1        THE DEFENDANT:  -- Iskandar Safa --

2        THE COURT:  Would you spell that, please?

3        THE DEFENDANT:  First name I-S-K-A-N-D-A-R, second

4    name S-A-F-A -- and Najib Allam, N-A-J-I-B, second name

5    A-L-L-A-M, wired me millions of dollars in unlawful kickbacks

6    from loan proceeds and illegal payments for my assistance in

7    securing loans made by Credit Suisse.  I agreed to accept and

8    keep these monies knowing that they were the proceeds of

9    illegal activity and -- sorry -- that it was illegal for me to

10   do so, and that by doing so, I was helping to conceal the

11   source of the proceeds of the unlawful activity.  I took these

12   actions to enrich myself and my co-conspirators and to benefit

13   Credit Suisse, which gained substantial profits from the

14   ProIndicus and EMATUM loans in which it was involved.

15        While I was a managing director at Credit Suisse

16   Securities Europe Limited, in or about late February 2013,

17   Credit Suisse was in the process of closing a $372 million

18   loan to ProIndicus.  I led the deal team.  Boustani offered to

19   pay me half of the amount by which I, together with others,

20   reduced a subvention fee to be paid --

21        THE COURT:  A what fee, sir?

22        THE DEFENDANT:  Subvention fee.

23        THE COURT:  Would you spell that, please?

24        THE DEFENDANT:  Of course, Your Honor.

25   S-U-B-V-E-N-T-I-O-N.

1           -- subvention fee to be paid by Privinvest in

2    connection with the loan.  I accepted Boustani's offer,

3    successfully made efforts to reduce the fees paid by

4    Privinvest, and received payments by wire from Privinvest into

5    a bank account I opened in the United Arab Emirates with the

6    assistance of Privinvest employees.  Safa was aware of my

7    agreement with Boustani --

8                THE COURT:  Would you spell that again?

9                THE DEFENDANT:  Of course, Your Honor.  S-A-F-A.

10                THE COURT:  Thank you.

11                THE DEFENDANT:  Safa was aware of my agreement with

12    Boustani to secretly split the amount Privinvest saved from

13    the reduction of the subvention fee.

14           I also agreed with Safa and Boustani in March 2013

15    that I would receive a percentage of any further ProIndicus

16    loan proceeds that Privinvest received after the initial

17    $372 million ProIndicus loan.  I subsequently reached similar

18    agreements with Safa and Boustani to receive a percentage of

19    the loan proceeds from the EMATUM and MAM transactions, while

20    working as a director at Palomar Holdings, which is a company

21    two-thirds owned by Privinvest Shipbuilding Investments.  A

22    Privinvest entity and/or Palomar Holdings wired me millions of

23    dollars in connection with the Mozambican transactions into my

24    UAE bank account.

25           I believe the overall loan amount for the EMATUM

Proceedings                                    27

1    project was larger than was required by the Mozambicans to

2    establish a tuna fleet and that it was sized according to the

3    available financing offered by Credit Suisse and VTB to

4    Privinvest.  In order to maximize the loan size for EMATUM,

5    Surjan Singh, a managing director at Credit Suisse leading the

6    EMATUM deal team, suggested structuring financing for the

7    EMATUM loan as a bond to take advantage of the international

8    bond market.  I made Boustani aware that Credit Suisse would

9    solicit the international bond markets to raise money for the

10   EMATUM loan.  Boustani and Safa both knew that Credit Suisse

11   was intending to repackage the $500 million loan to EMATUM

12   days later and sell it to investors as a bond.

13        I knew that the payments Privinvest made to me

14   related to the ProIndicus upsizes and the EMATUM loan by

15   Credit Suisse were not disclosed in the loan documents.  For

16   example, I knew that an individual who worked at Credit Suisse

17   and who was responsible for syndicating the ProIndicus upsizes

18   sent loan agreements to investors and potential investors that

19   did not disclose payments to me.

20        I also knew another banker at Credit Suisse, Surjan

21   Singh, was secretly being paid by Privinvest to aid the

22   conspiracy.  Specifically, in September and October 2013, I

23   made two payments of $1 million each to Singh.  The payments,

24   which came from funds I received from Privinvest, were in

25   exchange for Singh's assistance in reducing the subvention fee

Proceedings                                    28

1   on ProIndicus and for securing Credit Suisse's approval of the

2   EMATUM loan.  I also assisted in bringing about an agreement

3   between Singh and Boustani of which Safa was aware under which

4   Singh received payments totalling $4.4 million at Boustani's

5   direction in exchange for facilitating Credit Suisse's

6   approval of the EMATUM loan.

7          While employed by Credit Suisse, I, and others at

8   Credit Suisse, knew that projects in emerging market

9   countries, such as those involving Safa and Mozambique,

10  presented a high risk of bribery.  At the time, I was not

11  concerned about the bank's or my potential exposure because I

12  had observed that Credit Suisse had used intermediating

13  brokers in transactions that featured a high risk of

14  corruption with the apparent view that doing so insulated

15  itself from legal liability.  At some time after I left Credit

16  Suisse and after the original loan transactions were

17  completed, Boustani told me that Privinvest had paid the son

18  of Mozambique's then-president at least $50 million.

19          THE COURT:  At least how much?

20          THE DEFENDANT:  $50 million, Your Honor.

21          THE COURT:  Five O?

22          THE DEFENDANT:  Five zero.

23          THE COURT:  Go ahead.

24          THE DEFENDANT:  That is the end of my allocution.

25          THE COURT:  Let me ask you before I ask the court

Proceedings                                    29

1    reporter to read it back, and before I ask the Government and

2    defense counsel if there are any other questions, is it true

3    that these events that you have described occurred in or about

4    and between 2011 and the date of the filing of the indictment?

5           THE DEFENDANT:  No, Your Honor.  They occurred

6    between 2013 and the date of filing of the indictment.

7           THE COURT:  2013 and the date of the filing of the

8    indictment.

9           And did any of these events occur, including the

10   flow of funds, within the Eastern District of New York here in

11   the United States?  Brooklyn?  Queens?  Staten Island?  Long

12   Island?  Within the Eastern District of New York as well as

13   elsewhere, did any of these events occur?  Did people fly in

14   to -- example -- fly in through Kennedy Airport to do road

15   shows, as they are referred to on the Street?  Anything like

16   that occur?

17          THE DEFENDANT:  Based on my understanding, Your

18   Honor, the payments -- the U.S. dollar payments naturally flow

19   through the Eastern District of New York.

20          THE COURT:  What is your basis for that

21   understanding?

22          THE DEFENDANT:  My understanding of the financial

23   system, Your Honor, as part of my employment as a banker at

24   Credit Suisse.

25          THE COURT:  Were you ever physically within the

1   Eastern District of New York during the course of any of these

2   criminal activities on your part individually?  Did you ever

3   come through airports in the Eastern District of New York,

4   have meetings here, make phone calls here, use computers in or

5   out of the Eastern District of New York in any way, shape, or

6   form?

7           THE DEFENDANT:  No, I did not, Your Honor.

8           THE COURT:  All right.  Let me ask the Government if

9   they have any additional questions they would like the Court

10  to ask the defendant.

11          MR. BINI:  Your Honor, the Government would just

12  note that if this case were to proceed to trial, among other

13  things, the Government would show that, as part of the

14  conspiracy, loan agreements offering circulars and other

15  marketing documents containing fraudulent statements were sent

16  by wire to investors in the United States, including in New

17  York City, and that as a result, investors in the United

18  States wired back millions of dollars in payments that were

19  invested in these loans.

20          THE COURT:  Let me ask the defendant.

21          Is that your understanding as well, sir?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  Go ahead.

24          MR. BINI:  In addition to that, the Government would

25  prove that in March of 2016, co-conspirators flew to John F.

```
                        Proceedings                     31
```

1   Kennedy Airport in Queens in order to attend a road show to

2   promote an exchange of the EMATUM loan participation notes for

3   a Eurobond in furtherance of the scheme.

4              THE COURT:  Let me ask the defendant.

5              Are you aware of that event?

6              THE DEFENDANT:  I was aware of the road show, Your

7   Honor.

8              THE COURT:  Of that road show as described by the

9   Government?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Go ahead.

12             MR. BINI:  In addition, the Government would show

13  that many wires related to the payment of bribes and kickbacks

14  to corrupt foreign officials and bankers passed through the

15  Eastern District of New York.

16             THE COURT:  Are you aware of that, sir, Mr. Pearse?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Anything else?

19             MR. BINI:  No, Your Honor.

20             THE COURT:  Is there anything that the defense would

21  like me to ask the defendant at this time?

22             MS. CAHILL:  No, Your Honor.

23             THE COURT:  Would the defendant like to say anything

24  else to the Court at this time?

25             THE DEFENDANT:  No, thank you, Your Honor.

Proceedings                                    32

1          THE COURT:  Based on the information provided to

2    this Court, I find the defendant is acting voluntarily; I find

3    the defendant fully understands the charges against him; I

4    find the defendant fully understands his rights and the United

5    States Constitution and laws; and I find the defendant fully

6    understands the consequences of his plea.  This Court,

7    moreover, finds there is a factual basis for the defendant's

8    plea.  I, therefore, accept the defendant's plea of guilty to

9    the charges set forth in Count One of the indictment.

10          I hereby order the Probation Department to provide

11   the Presentence Investigation Report within six months from

12   today's date; that is to say, on or before January 17th of

13   2020.

14          Now, is there anything further that the Government

15   would like the Court to address today?

16          MR. BINI:  Your Honor, the Government would just

17   ask -- I know we raised the bail conditions before for Your

18   Honor's consideration, and if Your Honor orders those bail

19   conditions, we would request that the Court redact the address

20   for the physical property that is noted in the bail rider and

21   on the bail bond.

22          THE COURT:  All right.  The Court is prepared to

23   enter under seal what has been marked as Court Exhibit 3 for

24   identification.  Let me read it without the specifics of the

25   address.

Proceedings                                      33

1           The order of William F. Kuntz, II, United States

2    District Judge, reads as follows:  The Court hereby orders the

3    defendant, Andrew Pearse, to be released on bail under the

4    following conditions:

5           a) Conditions throughout the release:  A

6    $2.5 million bond secured by the defendant and his wife's

7    interest in their home as identified in Court 3.

8           That will be under seal, the address.

9           MR. BINI:  Thank you, Your Honor.

10          THE COURT:  Defendant shall -- point 2:  Defendant

11   shall not apply for travel documents; defendant shall

12   surrender his passport to defense counsel who will not release

13   the defendant's passport except temporarily for approved

14   travel between the United Kingdom -- the U.K. -- and New York,

15   and will accompany the defendant for all such travel;

16          3) The defendant shall not engage in financial

17   transactions above the amount of $15,000 U.S. without the

18   prior written consent of the United States Government and on

19   the express written notice to this Court;

20          4) The defendant shall report to Pretrial Services

21   via telephone and via the Internet as directed.

22          Next, with respect to conditions from July 19, 2019,

23   through September 3rd of 2019:

24          Point 5:  The defendant's travel shall be restricted

25   to the U.K., the Eastern District of New York, and the

1    Southern District of New York with travel between the U.K. and

2    New York for the purposes of proceedings in this action only;

3              6) The defendant shall provide written notice to the

4    United States Government of all itineraries in advance of

5    travel to and from New York for purposes of these proceedings,

6    including for meetings with the United States Government.  The

7    Government is to be provided with copies of the written notice

8    at the same time as the United States Government;

9              7) The defendant shall report in person to defense

10   counsel's offices in U.K., London, on a weekly basis, and

11   defense counsel shall provide same-day written confirmation to

12   Pretrial Services of each check-in by the defendant;

13             8) The defendant shall report by telephone or video

14   conference on a weekly basis to the Federal Bureau of

15   Investigation agents handling this action.

16             And with respect to conditions to begin on

17   September 3rd of 2019, the defendant's travel shall be

18   restricted to the Eastern District of New York and the

19   Southern District of New York; and

20             10) The defendant shall consent to electronic

21   monitoring.

22             So ordered by the Honorable William F. Kuntz, II,

23   July 19, 2019.

24             May I have a motion to have what has been marked as

25   Court Exhibit 3 admitted into evidence from the Government?

Proceedings                                              35

1           MR. BINI:  Your Honor, the Government would so move

2   and ask that it be moved under seal due to the sensitive

3   nature of the address that is set out in those papers.

4           THE COURT:  Any objection?

5           MS. CAHILL:  None, Your Honor.

6           THE COURT:  The application is granted and Court 3

7   is admitted in evidence under seal.

8           (Court's Exhibit 3 was received in evidence.)

9           THE COURT:  Now, we have Court 4.  This is the

10  preprinted form order setting conditions of release.  It's

11  been signed by the parties; is that right?

12          MR. BINI:  Yes, Your Honor.

13          THE COURT:  Is this the version of that that's

14  signed by the parties?

15          MR. BINI:  Has it been signed by the defendant?

16          MS. CAHILL:  It was signed by the defendant.

17          THE COURT:  All right.  Why don't you take a look at

18  it, make sure that's the right version and check the numbers

19  over.

20          MS. VASQUEZ:  Your Honor, I just wanted to hand

21  up --

22          THE COURT:  Sit down, please, and use the microphone

23  and state your name before you speak so the record's clear.

24  The "sit down" part helps, too, with the microphone.

25          MS. VASQUEZ:  This is Pretrial Services Officer

```
                          Proceedings                    36
```

1   Vasquez.  I just received an amended page 2 to the bond from

2   my office who helped prepare the bond, and I just wanted to

3   explain that the last condition was moved up to be Number 5 so

4   that that condition having no contact with the co-defendants

5   would fall throughout his entire period of supervision, not

6   just starting --

7           THE COURT:  I won't even pretend that I understand

8   what you're saying, so let's slow it down.  Do you have a

9   physical amendment to --

10          MS. VASQUEZ:  I do.

11          THE COURT:  You've got to let me finish.

12          You have a physical amendment to Court 4?

13          MS. VASQUEZ:  I believe it's Court 3.

14          THE COURT:  You have a physical amendment to

15  Court 3?

16          MS. VASQUEZ:  Correct.  It's page 2 of the --

17          THE COURT:  Why don't you hand it up so I can look

18  at it.

19          MS. VASQUEZ:  Sure.

20          THE COURT:  Give it to my court deputy.  Thank you.

21          The document that I read out loud and has been

22  admitted under seal as Court 3 did not contain a reading of

23  this second page -- this third page, actually, which is

24  captioned:  USA versus Andrew Pearse, 1 colon, 18, dash, CR,

25  dash, 681, dash, 06.  So what I'm now going to ask the

Proceedings                                                   37

1    courtroom deputy to do is to mark as Court Exhibit 3-A the

2    document you just handed up.

3              Would you please mark this as Court 3-A.

4              THE COURTROOM DEPUTY:  Will do, Judge.

5              THE COURT:  Show it to the parties and let's see if

6    there's any objection to Court 3-A being admitted and admit it

7    under seal as well.  So let's mark it.  I know I'm old school

8    this way, but my friends on the 17th floor like that.  So mark

9    it as 3-A.

10             Government, would you retrieve it and make sure it's

11   what you want and show it to defense counsel and then if you

12   want it admitted, we will move it in as Court 3-A, that way

13   the record will be clear.

14             MR. BINI:  I'm going to hand it to defense counsel.

15             THE COURT:  Yes, please.

16             MS. CAHILL:  That's fine.

17             Yes, Your Honor, this is fine.  Should I hand it

18   back up?

19             THE COURT:  Yes, please hand it back up.

20             May I have a motion from the Government to have

21   Court 3-A admitted into evidence under seal?

22             MR. BINI:  So moved, Your Honor.

23             THE COURT:  Any objection?

24             MS. CAHILL:  No, Your Honor.

25             THE COURT:  It's admitted.

Proceedings                    38

 1              (Court's Exhibit 3-A was received in evidence.)

 2              THE COURT:  So now we have Court 3 in under seal, we

 3    have Court 3-A under seal, and everybody is on the same page,

 4    including my friends on the 17th floor.  Okay?

 5              MR. BINI:  Thank you, Your Honor.

 6              THE COURT:  Thank you.  Now, hang on, now we have

 7    Court 4, correct?

 8              MR. BINI:  Yes.  May I return it to Your Honor?

 9              THE COURT:  Has the other side seen it?

10              MR. BINI:  Let me hand it to defense counsel, Your

11    Honor.

12              THE COURT:  Please do.  Let's see if they've got any

13    changes, corrections or late-breaking developments to amend

14    this document.

15              MS. CAHILL:  No, Your Honor, this is the correct

16    document.  May I hand it up?

17              THE COURT:  You most certainly may.

18              MS. CAHILL:  Thank you.

19              THE COURT:  Thank you.  I have what has been marked

20    as Court Exhibit 4 for identification, the preprinted form

21    order setting conditions of release and appearance bond in

22    this case.  It's been signed by the defendant and both the

23    Government and defense counsel have reviewed it.

24              May I have a motion to have Court 4 admitted into

25    evidence under seal?  I'm prepared to sign it right now.

```
                        Proceedings                    39
```

1           MR. BINI:  Your Honor, I would seek its admission

2    under seal, Your Honor.

3           THE COURT:  Any objection from defense counsel?

4           MS. CAHILL:  I have no objection, Your Honor.  Thank

5    you.

6           THE COURT:  It is admitted under seal.  I am signing

7    it as a judicial officer right now.  Court 4 is admitted under

8    seal.

9           (Court's Exhibit 4 was received in evidence.)

10          THE COURT:  Now, who gets copies of Court 4 in terms

11   of the processing?  Some of it has to go to the -- here you

12   are.

13          MR. BINI:  Yes, if I can get a copy.

14          THE COURT:  Why don't you describe just briefly what

15   the process is so the record is clear on that.

16          MR. BINI:  Your Honor, if a copy could go to defense

17   counsel, a copy to the Government, a copy to the Court, and a

18   copy to the U.S. Marshals.

19          THE COURT:  All right.  Any objection to that?

20          MS. CAHILL:  No, Your Honor.

21          THE COURT:  Okay.  That will happen, we will have

22   the copies made that need to be made, and my crackerjack

23   courtroom deputy and law clerks who keep me out of trouble

24   with the Court of Appeals on the 17th floor will do it.

25          MR. BINI:  Thank you, Your Honor.

Proceedings                                          40

1              THE COURT:  You're very welcome.

2              Is there anything else we need to address this

3      afternoon?

4              MR. BINI:  Not for the Government.

5              THE COURT:  Anything else from defense counsel?

6              MS. CAHILL:  Not for the defense, Your Honor.  Thank

7      you so much.

8              THE COURT:  Well, thank you very much, and just sit

9      tight everyone and the copies will be made and brought back to

10     you, but right now I'm going to disappear and let those who

11     are truly competent -- my law clerks and courtroom deputy --

12     handle the paper and get it to you.

13             Have a good afternoon, everyone.

14             Mr. Pearse, thank you very much.

15             We're adjourned.

16             MR. BINI:  Thank you, Your Honor.

17             THE COURTROOM DEPUTY:  All rise.

18             (Matter concluded.)

19

20                     *     *     *     *     *

21

22     I certify that the foregoing is a correct transcript from the
       record of proceedings in the above-entitled matter.

23

24      /s/ Denise Parisi                    July 22, 2019
       _____     _____
25         DENISE PARISI                          DATE

41

# I N D E X

**EXHIBITS**                                              **PAGE**

Court's Exhibit 1                                9

Court's Exhibit 2                               12

Court's Exhibit 3                               35

Court's Exhibit 3-A                             38

Court's Exhibit 4                               39