UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
THE UNITED STATES OF AMERICA,

-against-

DETELINA SUBEVA, SURJAN SINGH, and
ANDREW PEARSE

                Defendants.
───────────────────────────────

MEMORANDUM & ORDER

18-CR-0681 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendants Detelina Subeva, Surjan Singh, and Andrew Pearse move for reconsideration of the court's May 16, 2025 Memorandum and Order granting VTB Capital ("VTBC") restitution for their parts in wide-ranging conspiracies to commit wire fraud and money laundering. (*See* Subeva's Mot. for Recons. ("Subeva's Mot.") (Dkt. 830); Singh's Mot. for Recons. ("Singh's Mot.") (Dkt. 831); Pearse's Mot. for Recons. ("Pearse's Mot.") (Dkt. 838); *see also* May 16, 2025 Mem. & Order ("2025 Order") (Dkt. 803).) For reasons now discussed, the court GRANTS Subeva's and Singh's motions, GRANTS IN PART Pearse's motion, and VACATES IN PART the 2025 Order.

I. BACKGROUND

Subeva, Singh, and Pearse—along with other co-defendants—were convicted of orchestrating a scheme to obtain approximately $2 billion in loans from international investors for three projects purportedly designed to develop the economy of the Republic of Mozambique.[1] (*See* 2025 Order at 1.) The investors made these loans to three Mozambican state-owned entities specifically created for the so-called development projects: MAM

───────────────────

[1] The court assumes familiarity with the relevant facts and procedural history of this case. Nevertheless, it briefly summarizes the context leading to this order.

1

borrowed $535 million from VTBC, EMANTUM borrowed $850 million from Credit Suisse and VTBC,[2] and Proindicus borrowed $900 million from Credit Suisse and VTBC. (*Id.* at 1-2.)

Subeva, Singh, and Pearse received millions of dollars in illicit payments during their time as Credit Suisse bankers in relation to the loans. (*See id.* at 2-3.) Subeva and Pearse do not dispute that they also received payments due to their involvement with loans from VTBC. (*See generally* Subeva Mot.; Pearse Mot.) Singh, however, only received them due to his involvement with loans directly from Credit Suisse to EMANTUM and a subset of the loans to Proindicus. (Singh's Mot. at 2.) He was uninvolved with either the VTBC loans to Proindicus or VTBC's loans to MAM. (*See id.* (citing *Boustani* Trial Tr. 3042:14-18, Nov. 7, 2019 (Cross Examination of Singh) ("In relation to the Proindicus up-sizes, there [wa]s a similar request . . . for [VTBC] to complete the upsize."); *id.* at 3048:14-18 ("[T]he MAM transaction . . . was solely undertaken by . . . [VTBC]. Q. You had no role in that, correct? A. That is correct, sir, I had nothing to do with MAM.").)

All three defendants pleaded guilty to conspiracy charges. (*See* Min. Entry Dated 5/20/2019 (Dkt. 77) (Subeva); Min. Entry Dated 9/6/2019 (Dkt. 160) (Singh); Min. Entry Dated 7/19/2019 (Dkt. 117) (Pearse).) On August 11, 2022, Judge William F. Kuntz, II sentenced Subeva. (*See* Min. Entry Dated 8/11/2022.) At that time, Judge Kuntz also entered a Memorandum and Order, which concluded that "[r]estitution is not applicable to [Subeva's] case." (Mem. & Order Dated 8/11/2022 ("2022 Order") (Dkt. 446) at 11 (citing 18 U.S.C. § 3663).) The final judgment as to Subeva indicated the same. (*See* Subeva J.

---

[2] VTBC did not seek restitution for its EMANTUM bond issuance, meaning that the court included only Proindicus and MAM loans in its calculations.

(Dkt. 447) at ECF p.3.) Before sentencing Singh and Pearse, however, Judge Kuntz recused himself from the case. (*See* Order of Recusal Dated 3/19/2023.)

After the case was reassigned, this court issued the 2025 Order now under reconsideration. (*See generally* 2025 Order.) In that Order, the court directed Subeva, Singh, and Pearse to pay restitution to VTBC as the victim of their conspiracies.[3] (*See id.* at 20.) It concluded that the Government had met its burden to prove that VTBC had lost $352,200,000 due to co-defendant Manuel Chang's offenses of conviction,[4] and that the apportionment of liability for that loss among Subeva, Singh, and Pearse (as Chang's convicted co-defendants) was appropriate. (*Id.* (citing 18 U.S.C. § 3664(h)).) Still, the court acknowledged that "Judge Kuntz did not order Subeva to pay restitution as part of her sentencing." (*Id.* at 3 n.1.) The court divvied up liability based on each defendant's relative share of the total amount of illicit kickbacks that he or she received across all the Proindicus, EMANTUM, and MAM loans. (*See id.* at 18-20 & n.12.) Concluding that these payments are "a reasonable proxy for [the defendants'] relative culpability for VTBC's losses," the court neither limited each defendant's liability to the loans that he or she helped orchestrate, nor cabined its analysis to loans from VTBC. (*See id.* at 19-20.)

---

[3] The 2025 Order does not provide restitution for Credit Suisse. (2025 Order at 18-19 n. 11 ("[T]he court finds that VTBC is not entitled to restitution from Credit Suisse.") As the court explained, the bank's own involvement in the scheme led it to plead guilty as a co-conspirator and to pay restitution to 18 investor-victims—none of which were VTBC. (*Id.* (explaining in addition that Credit Suisse's plea agreement does not cover VTBC's restitution request for its Proindicus and MAM loans).

[4] Michael Chang is the former Finance Minister of Mozambique, and was found guilty of conspiring with Subeva, Singh, and Pearse. (*See* 2025 Order at 1.)

Subeva, Singh, and Pearse then filed independent motions for reconsideration seeking to vacate the 2025 Order. (*See generally* Subeva's Mot.; Singh's Mot.; Pearse's Mot.) The court considers each in turn.

## II. LEGAL STANDARD ON MOTIONS FOR RECONSIDERATION

Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions "have traditionally been allowed within the Second Circuit." *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006) (citing *United States v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993)).[5] "When considering such motions, district courts have applied the applicable civil standard." *United States v. Crumble*, No. 18-CR-0032 (ARR), 2023 WL 3220983, at *2 (E.D.N.Y. May 3, 2023); *see also United States v. Whaley*, No. 09-CR-0619 (JMA), 2024 WL 2846952, at *1 (E.D.N.Y. June 5, 2024) ("The standards for reconsideration among the civil and criminal rules are largely the same."). Consequently, the moving party must "point to controlling decisions or data that the court overlooked" that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## III. DISCUSSION

Subeva and Singh each cite specific "controlling decisions or data" that the court did not consider in the 2025 Order. *See id.* That information "might reasonably be expected to alter" the court's order that they pay restitution. *See id.* Although the same

---

[5] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

is not generally true for Pearse, he does bring forward information regarding his ability to pay that was not addressed in the 2025 Order. The court now explains why.

### A. Subeva's Motion

Subeva argues that the court erred because its 2025 Order contravened the 2022 Order. In the earlier order, she says, Judge Kuntz "definitively and finally resolved" the restitution question by "expressly and explicitly" finding that the remedy was "'not applicable' in her case." (Subeva's Mot. at 4 (quoting 2022 Order at 10).) She further argues that "spring[ing]" a restitution obligation on her in 2025 "would prejudice her from disturbed expectations of repose." (*Id.* (quoting *United States v. Avenatti*, 81 F.4th 171, 206 (2d Cir. 2023)) (alterations adopted).) Thus, Subeva concludes that the 2025 Order "contravene[d] 18 U.S.C. § 3664(d)(5)" along with "controlling . . . precedent" interpreting the statute. (*Id.* (citing *United States v. Addonizio*, 442 U.S. 178, 189 (1979); *Dolan v. United States*, 60 U.S. 605, 608 (2010); *United States v. Gushlak*, 728 F.3d 184, 192 n.4 (2d Cir. 2013).)

The Government agrees. It states that Judge Kuntz "created an expectation of repose that is likely prejudiced" by this court's imposition of a restitution order as to Subeva. It notes that the court "entered . . . Subeva's final sentence," which "expressly found that restitution was inapplicable, and gave no indication that any restitution-related issues remained pending." (Gov't Resp. to Subeva's Mot. & Singh's Mot. ("Govt.'s Subeva & Singh Resp.") (Dkt. 836) at 3 (citing 2022 Order at 10; Subeva J.).)

The parties are correct. 18 U.S.C. § 3664(d)(5) permits a district court under certain circumstances to expressly reserve the question of restitution for up to 90 days after sentencing. Still, the Supreme Court held in *Dolan* that a trial court "retains the power to order restitution" after the 90-day deadline if it "made clear prior to the deadline's expiration that it would order restitution."

560 U.S. at 608. A court only makes that intention clear, however, if a defendant "was at all times fully aware that the sentence announced at his sentencing hearing contained a blank space to be filled in with a dollar amount once restitution proceedings had run their course." ; *see Avenatti*, 81 F.4th at 206 (holding that the 90-day restitution deadline applies unless "the district court made clear at sentencing that the question of restitution was still very much pending").

Subeva's sentencing hearing was held on August 11, 2022—nearly three years before the entry of the Restoration Order and well past the 90-day deadline. (Min. Entry Dated 8/11/2022.) As this court acknowledged in the 2025 Order, "Judge Kuntz did not order Subeva to pay restitution as part of her sentencing." (2025 Order at 3 n.1.) Even more, Judge Kuntz also explicitly stated that restitution was "not applicable" to Subeva's case. (2022 Order at 11.) And far from "contain[ing] a blank space to be filled in with a dollar amount," Subeva's final judgment was filled in to state that the restitution amount she owed was "$0.00." *See Gushlak*, 728 F.3d at 192 n.4; (Subeva J. at ECF p.3). Given this, Subeva could not have been "fully aware" that the court might order her to pay any amount of restitution three years later. *Gushlak*, 728 F.3d at 192 n.4. Therefore, to avoid "prejudice" from Subeva's "disturbed expectations of repose," the court honors Judge Kuntz's judgment. *See Avenatti*, 81 F.4th at 206. Thus, Subeva owes $0.00 in restitution and the 2025 Order is vacated to the extent it concludes otherwise.

### B. Singh's Motion

Singh argues that the court erred because he "had no involvement in VTBC's Proindicus loan or VTBC's MAM loan."[6] (Singh's Mot. at 2.) He explains that he "worked exclusively for Credit Suisse and was involved only in the initial Proindicus loan and subsequent Proindicus loans (or 'upsizes') that Credit Suisse managed." (*Id.*) He further explains that VTBC only became involved after Credit Suisse provided those loans to handle "the final Proindicus loan and $350 million bond issuance for EMATUM." (*Id.*)

The Government agrees. It contends that Singh "is not liable . . . for any of the losses sustained by VTBC" under the Mandatory Victim Restitution Act of 1996 (the "MVRA").[7] (Govt.'s Subeva & Singh Resp. at 3.) It explains that Singh "was not involved with VTBC's decision to extend either the Proindicus upsize loan or the MAM loan," which were "the only transactions for which VTBC sought restitution." (*Id.*)

Again, the parties are correct. Under the MVRA, restitution is only permissible where the victim's losses are the direct and proximate result of the offense of conviction. 18 U.S.C. § 3663A(a)(2); *see United States v. Calderon*, 944 F.3d 72, 95 (2d Cir. 2019) ("To qualify as a 'victim' [under the MVRA] . . . a party must have endured a financial loss that was directly and proximately caused by a defendant's fraud.") (emphasis omitted). For conspiracy convictions, the "scheme, conspiracy, or pattern of

---

[6] Singh raises two further arguments. First, he contends that the court erred because it ordered him to pay restitution before sentencing and without an opportunity to be heard on the issue. (*See* Singh's Mot. at 2.) Second, he asserts that the court erroneously failed to consider his financial resources, as well as his financial needs and earning ability under 18 U.S.C. § 3663(a)(1)(B)(i)(II). (*Id.* at 4.) Because the court grants Singh's motion on his MVRA argument, it need not consider these points.

[7] 18 U.S.C. § 3663A.

criminal activity" that leading to restitution must be an "element" of the offense of conviction. 18 U.S.C. § 3663A(a)(2); *In re Loc. 46 Metallic Lathers Union*, 568 F.3d 81, 87 (2d Cir. 2009) (quoting the same).

It was never established that Singh participated in the transactions that caused the financial losses underpinning VTBC's right to restitution. His conspiracy conviction was based on laundering kickback payments through March 2014. (*See* Govt.'s Subeva & Singh Resp. at 3.) That conduct, however, finished two months before the MAM loan and eight months before the VTBC's Proindicus upsize. (*See id.*) Consequently, Singh's money laundering was not an "element" of his conspiracy conviction. *See In re Loc. 46 Metallic Lathers Union*, 568 F.3d at 87. Thus, VTBC was not "directly and proximately harmed as a result of the commission of [Singh's] offense," and this court cannot order restitution. 18 U.S.C. § 3663A(a)(2); *see Calderon*, 944 F.3d at 95-96. Therefore, the court vacates its 2025 Order to the extent it concludes otherwise.

### C. Pearse's Motion

Pearse argues that the court erred for many reasons. First, he notes that VTBC "did not base its underwriting decision on either the Proindicus business plan or the MAM business plan," which he helped to prepare. (Pearse's Mot. at 1.) Instead, he observes that VTBC based its decision "solely on the existence of [a] government guarantee." (*Id.* at 2.) Second, according to Pearse, VTBC "did not sell any share of either loan to investors," which he presumably thinks speaks to a lack of harm to VTBC. (*Id.*) Third, Pearse asserts that he "had no influence over [VTBC's] internal approval process for loans" because it "conducted its own due diligence." (*Id.* at 3.) Fourth, he questions whether VTBC is entitled to any restitution at all, claiming that "over and over again . . . the government repeated its position that [VTBC] was not a victim of the fraud for which it sought prosecution." (*Id.*)

To support this argument, Pearse points to a settlement agreement between VTBC and the Republic of Mozambique regarding the loans at issue, and states "it must be assumed that [VTBC] was happy with those terms." (*Id.* at 4.) Finally, as a back-up argument Pearse asks the court to cap any restitution order to 5% of his post-tax income and to allow him a three-year "grace period" before any restitution payments may be owed. (*Id.*) He reasons that such modifications to the 2025 Order are warranted because he is "essentially destitute." (*Id.*)

The Government disagrees. (Gov't's Resp. to Pearse's Mot. ("Govt.'s Pearse Resp.") (Dkt. 840) at 2.) It notes that Pearse pleaded guilty to conspiring "to defraud one or more investors and potential investors in Proindicus, EMANTUM[,] and MAM," and that VTBC's losses "flowed from the reasonably foreseeable actions" of Pearse and his co-conspirators. (*Id.* at 3 (quoting Sealed Indictment (Dkt. 1) ¶ 95).) As the Government explains, VTBC would not have invested in either Proindicus or MAM had Chang not made sovereign guarantees for each of the loans. (*Id.*) That causal link was reasonably foreseeable to Pearse due to his professional background and work at Credit Suisse, which included "structuring and shepherding" the Proindicus and MAM loans. (*Id.*) Further, the Government states that Pearse was aware that material misrepresentations in the loan agreements and related business plans (which he helped prepare) "induced" VTBC to go forward with the transactions. (*Id.* at 3-4.) Thus, the Government reaffirms that "the preponderance of the evidence shows that the wire fraud conspiracy—the offense of conviction—and . . . Pearse's participation therein, directly and proximately caused VTBC's losses."[8] (*Id.* at 4.)

    The Government is correct that Pearse must pay restitution to VTBC. Under the MVRA, the court must order restitution

---

[8] The Government does not address Pearse's request for a cap and three-year pause on payments. (*See generally* Govt.'s Pearse Resp.)

"to each victim in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). For conspiracy charges, the victim's losses may be calculated to include those based on the defendant's acts and "losses flowing from the reasonably foreseeable actions of that defendant's co-conspirators." *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021); *accord United States v. Holmes*, 673 F. Supp. 3d 1049, 1058 (N.D. Cal. 2023) (explaining that "the causal nexus" required by the MVRA "need only be between [d]efendants' misconduct and the victims' decisions to invest"), *aff'd*, 129 F.4th 636 (9th Cir. 2025). The court must order restitution "regardless of the defendant's economic circumstances." *United States v. Reifler*, 446 F.3d 65, 122 (2d Cir. 2006). But it retains discretion to consider "the financial resources and other assets of the defendant" when determining "the schedule according to which[] restitution is to be paid." 18 U.S.C. § 3664(f)(2).

VTBC's losses "flow[ed] from the reasonably foreseeable actions" of Pearse and his co-conspirator Chang. *See Goodrich*, 12 F.4th at 228. VTBC was a primary lender on both the Proindicus upsize and the MAM loans. (*See* VTBC's Letter to Probation re Losses in Support of Restitution (Dkt. 780-2) at ECF pp.3-4.) The court also heard testimony that VTBC would not have made those loans had Chang not provided sovereign guarantees for each. (*See* Gov't's Pearse Resp. at 3.) As the Government demonstrates, that effect was reasonably foreseeable to Pearse. (*See id.*) So too for the material misrepresentations in the loan agreements and business plans that he helped create. (*Id.*) Thus, there is "ample evidence" that both Chang's and Pearse's misconduct directly and proximately harmed VTBC by inducing it to invest in Proindicus and MAM. (*See* Mem. & Order as to Chang Dated 11/13/2024 (Dkt. 754) at 22.) Thus, the court must order restitution as to Pearse. *See Goodrich*, 12 F.4th at 228.

The court, however, is sympathetic to Pearse's alternative argument that his finances warrant reduced payments and an initial pause. (*See* Pearse's Mot. at 4.) It is also noteworthy that the Government has chosen not to refute this argument. (*See generally* Govt.'s Pearse Resp.) Thus, the court will amend its prior order to limit the amount payable to 5% of Pearse's post-tax income with an initial grace period of three years. *See* 18 U.S.C. § 3664(f)(2).

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Subeva's and Singh's motions for reconsideration and VACATES IN PART the 2025 Order as to these two defendants. The Government is DIRECTED to provide the court with further direction on how to reallocate restitution payments among the remaining defendants in this case. The court GRANTS IN PART and DENIES IN PART Pearse's motion for reconsideration and VACATES IN PART the 2025 Order regarding the schedule of payments as to Pearse.

SO ORDERED.

Dated:   Brooklyn, New York
         December 12, 2025

                                              s/Nicholas G. Garaufis
                                              _____
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

11